IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CAROL MCKEEN,<br><br>               Plaintiff,<br>v.<br><br>USAA CASUALTY INSURANCE COMPANY,<br><br>               Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO BIFURCATE**<br><br>Case No. 2:14-cv-396-DN-PMW<br><br>District Judge David Nuffer<br>Magistrate Judge Paul M. Warner |

      In this dispute about underinsured motorist insurance coverage, Plaintiff Carol McKeen ("McKeen") seeks damages for two causes of action: breach of contract and breach of the implied covenant of good faith and fair dealing. McKeen was injured in an automobile-pedestrian accident, and settled with the insurance company of the at-fault driver (Farmers Insurance) for policy limits—$250,000.00 plus an additional $5,000.00 in medical expenses. After settling with Farmers Insurance, McKeen filed a claim for underinsured motorist ("UIM") benefits with her own insurance company—Defendant USAA Casualty Insurance Company ("USAA")—and USAA ultimately denied the claim after determining internally that the value of her injuries did not exceed the liability limits paid by Farmers Insurance on behalf of the at-fault driver.

      USAA moves to bifurcate the breach of contract and bad faith portions of this case at trial ("Motion").[1] McKeen opposes bifurcation ("Opposition").[2] The parties have argued the

---

[1] USAA-CIC's Motion and Memorandum in Support of Motion to Bifurcate ("Motion"), docket no. 71, filed July 18, 2016; Reply to Plaintiff's Memorandum in Opposition to Motion to Bifurcate ("Reply"), docket no. 86, filed Aug. 1, 2016.

[2] Memorandum in Opposition to Motion to Bifurcate ("Opposition"), docket no. 83, filed July 27, 2016.

bifurcation issue at the final pretrial conference,[3] filed supplemental briefing on the Motion,[4] and discussed the issue in a telephone conference.[5] For the reasons set forth below, the Motion is GRANTED.

## STANDARD FOR BIFURCATION

Federal Rule of Civil Procedure 42(b) authorizes a district court to bifurcate a trial "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ."[6] Bifurcation decisions are reviewed "for abuse of discretion."[7] "District courts have broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused."[8]

The party moving for bifurcation "bears the burden of convincing the court to exercise its discretion in separating a trial."[9] "Bifurcation is not the standard in a typical case . . . because a single trial generally is more convenient, subject to fewer delays, and is less costly than multiple trials."[10]

## DISCUSSION

In arguing that bifurcation is necessary, USAA focuses on prejudice and confusion. For example, USAA argues that "the focus of Plaintiff's breach of contract claim should be the determination of her damages, and the focus of Plaintiff's bad faith claim should be USAA-

---

[3] Minute Entry, docket no. 89, entered Aug. 2, 2016.

[4] Supplemental Memo in Support of Motion to Bifurcate ("USAA Supplement"), docket no. 90, filed Aug. 4, 2016; Supplemental Memorandum in Opposition to Motion to Bifurcate ("McKeen Supplement"), docket no. 93, filed Aug. 4, 2016; Reply to Plaintiff's Memorandum in Opposition to Motion to Bifurcate ("USAA Supplemental Reply"), docket no. 96, filed Aug. 5, 2016; Memorandum Regarding Relevancy of Insurance Reserves, docket no. 102, filed Aug. 10, 2016.

[5] Minute Entry, docket no. 101, entered Aug. 8, 2016.

[6] Fed. R. Civ. P. 42.

[7] *U.S. ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1283 (10th Cir. 2010) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir.1999)).

[8] *Bahrani,* 624 F.3d at 1283 (quoting *Anaeme,* 164 F.3d at 1285) (internal quotation marks omitted).

[9] *Trujillo v. Am. Fam. Mut. Ins. Co.*, No. 1:08-cv-36-TS, 2009 WL 440638, *2 (D.Utah Feb. 20, 2009) (unpublished).

[10] *Id.*

CIC's handling of the claim."[11] "Bifurcating the breach of contract claim from the bad faith claim" USAA argues, "will avoid prejudice and alleviate any confusion of the issues."[12]

McKeen argues that bifurcation would be inconvenient and would not expedite or economize the trial process. McKeen states that bifurcation would be an "added burden for the parties, the Court, and the jury to have to go through the trial process twice—two openings, two evidence presentations, two closing arguments, two rounds of jury instruction, and two deliberations."[13]

Each of the factors listed in Federal Rule of Civil Procedure 42(b)—convenience, prejudice, and expedition/economization—will be discussed below. Each of the factors must be balanced "to make a decision that is 'most likely to result in a just final disposition of the litigation.'"[14]

## Prejudice

Two cases provide important guidance about prejudice in the bifurcation context. The first is *Trujillo v. American Family Mutual Insurance*[15] and the second is *State Farm Mutual Automobile Insurance Company v. Shrader*.[16]

In *Trujillo*, the insured (Trujillo) was involved in an auto accident and sustained injuries. Trujillo settled with the insurance companies of the other drivers in the accident for policy limits and then submitted a UIM claim with her own insurance company, American Family. American Family denied Trujillo's claim on the grounds that Trujillo had been fully compensated through

---

[11] Motion at 7.

[12] *Id.*

[13] Opposition at 4.

[14] *Trujillo*, 2009 WL 440638 at *2.

[15] *Id.*

[16] *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813 (Wyo. 1994).

the settlements with the other drivers' insurance companies. Trujillo then sued American Family for breach of contract and breach of the implied covenant of good faith and fair dealing. American Family moved for bifurcation, arguing that allowing a jury to hear evidence on both claims during the same trial would be prejudicial and would confuse the jury. "Specifically, American Family argue[d] that evidence regarding settlement evaluations and negotiations that would pertain to the bad faith claim have no relevance to the express breach claim" and that "settlement evidence would be prejudicial in a jury's deliberations of the express breach claim."[17]

Trujillo, on the other hand, argued that bifurcation should not be granted because she had evidence that would apply to both claims and both claims arose out of the same accident. She argued that limiting instructions could be given to the jury to ensure the jury used the settlement evidence to decide only the bad faith claim, not the breach of contract claim. The court found "sufficient grounds for prejudice to warrant bifurcation."[18] "While it would be proper for the jury to hear evidence on settlement negotiation regarding a bad faith claim," the court stated, "such evidence could prejudice a jury in its determination of the express breach of contract claim." The court continued: "To provide American Family with a fair and just trial, the jury should not hear evidence regarding settlement negotiations before deciding the express breach of contract claim."[19] *Trujillo* also concluded that bifurcation was warranted because "American Family was not the source of Trujillo's damages in the motor vehicle accident[.]"[20]

*Shrader* was decided on very similar facts. Shrader, insured by State Farm under a policy that included an uninsured motorist ("UM") provision, was injured by a sixteen-year-old

---

[17] *Trujillo*, 2009 WL 440638 at *2.

[18] *Id.* at *4.

[19] *Id.*

[20] *Id.*

uninsured driver. Shrader submitted a claim to State Farm, but attempts to negotiate a settlement failed. Shrader filed suit against State Farm alleging, among other claims, breach of contract and breach of the implied covenant of good faith and fair dealing. State Farm moved to bifurcate the proceedings, but the district court denied the motion and conducted a single trial on all issues. Reversing the trial court, the Wyoming Supreme Court held that:

> Separate trials are not automatically required when an insured brings an action against an insurer for breach of contract and breach of the implied covenant of good faith and fair dealing. Prejudice is only found when the trial of all causes of action unfairly forces the insurer to choose between 1) insisting on its right to exclude evidence of settlement negotiations and coverage determinations (thereby losing the advantage of showing that it was attempting to be reasonable in defense of the bad faith claims) and 2) putting on such evidence and risking a prejudicial inference that it has admitted liability on the contract action.[21]

The Wyoming Supreme Court explained that while settlement negotiations would be relevant to the bad faith claim "to refute claims of undue delay,"[22] evidence of those negotiations would prejudice the jury by suggesting that the Shraders were "legally entitled" to at least some indemnification under the State Farm policy. The Wyoming Supreme Court explained that "State Farm had a right to *exclude* evidence of the settlement offers to avoid possible prejudice from the seeming admission" and also "had a right to *introduce* evidence of settlement offers during the trial to refute the claims of unreasonable delay inherent in the cause of action for [bad faith]."[23]

Thus, *Trujillo* and *Shrader* stand for the proposition that bifurcation is warranted if admission of settlement negotiations, which the insurance company is entitled to introduce to refute claims of bad faith, would be prejudicial to the insurance company.

Here, USAA makes virtually the same argument as the insurance companies in *Trujillo* and *Shrader*. USAA argues "there is great risk of prejudice if evidence of USAA-CIC's

---

[21] *Shrader*, 882 P.2d at 830 (internal citations and quotation marks omitted).

[22] *Id.*

[23] *Id.* at 831 (emphasis added).

settlement approach and claim handling process was to be presented in the same trial as the contract claim. If the jury were to disagree with USAA-CIC's settlement approach or claims handling procedure, the jury may find for Plaintiff on that basis rather than based on whether Plaintiff's damages were sufficient."[24]

Attempting to avoid the bifurcation ordered in *Trujillo* and *Shrader*, McKeen argues that

> settlement discussions do not form any part of the basis of McKeen's implied covenant claim. After all, a demand for the maximum benefits available under an insurance contract is not an offer of compromise. Nor does an outright denial of these benefits constitute compromise. The very limited settlement discussions in which the parties finally engaged did not occur until many months after the facts giving rise to McKeen's claim took place. McKeen certainly does not intend to introduce evidence of these negotiations.[25]

McKeen's argument acknowledges that settlement negotiations took place. Therefore, USAA is entitled to present them to defend against the bad faith claim. Even though they were "very limited settlement discussions," the introduction of such discussions might suggest to a jury that USAA acknowledged it was obligated to pay, but refused. This would be prejudicial since a settlement offer is not necessarily an admission of liability.[26] "[O]nce the prejudicial evidence is offered the court cannot 'unring the bell' in the minds of jurors regarding the prejudicial evidence."[27] If a single trial were held and USAA was required to choose between presenting that evidence (which could improperly suggest to the jury that USAA considered itself liable) and not presenting that evidence (which would rob USAA of defending itself against bad faith), USAA would be placed in an untenable position, contrary to the guidance set forth in *Trujillo* and *Shrader*.

---

[24] Motion at 5.

[25] Opposition at 3.

[26] *See Trujillo* at *2-*3 (discussing case in which the "court reasoned that admitting the evidence of settlement negotiations in the breach of contract claim would violate the rule of evidence that settlement negotiations are inadmissible in order to establish liability").

[27] *Id.* at *3.

Further, if evidence of the claims process is presented at the same time the breach of contract claim is being litigated, there is a risk of prejudice to each of the parties. There is potential prejudice to USAA if a jury hears evidence about *how* the claim was processed before the jury determines breach. There is also potential prejudice to McKeen because of the content of the letters. Some of the content is so prejudicial, according to McKeen, that counsel moved at a recent hearing to redact part of the letters to remove it from consideration of the jury. To be clear, McKeen moved to redact portions of her own demand letters to USAA because McKeen believed they were too prejudicial. A ruling on the redaction of those letters will come later, but the mere existence of the dispute about the letters underscores their potential prejudice to McKeen, especially if they were considered at the same time the jury was attempting to determine the express breach of contract claim.

McKeen was asked during two separate hearings[28] to identify evidence other than settlement discussions that might overlap with or be relevant to both the breach of contract claim and the bad faith claim. The only other evidence McKeen cited besides "very limited settlement discussions" was USAA's establishment of reserves for the claim.[29] But as several cases have held, "reserves should not be equated with an admission or valuation by the insurer."[30] The cases cited by McKeen in her Memorandum Regarding Relevancy of Insurance Reserves do not support McKeen's position that reserves would be admissible to establish breach of contract.[31] Thus, USAA's establishment of reserves is not relevant to the breach of contract claim and

---

[28] Final Pretrial Conference (08/02/16) and Telephone Conference (08/08/16).

[29] McKeen Supplement at 2-3.

[30] *Silva v. Basin Western, Inc.*, 47 P.3d 1184, 1189 (Colo. 2002) (en banc); *see also Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 656 (Colo. 2012); *Seabron v. Am. Fam. Mut. Ins. Co.*, 862 F.Supp.2d 1149, 1157 (D.Colo. 2012).

[31] Memorandum Regarding Relevancy of Insurance Reserves, docket no. 102, filed Aug. 10, 2016 (citing principally *Olin Corp. v. Cont'l Cas. Co.*, No. 2:10-cv-00623-GMN, 2011 WL 3847140, at \*4 (D.Nev. Aug. 30, 2011) (unpublished); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 644 (D.Kan. 2007)).

would be prejudicial if presented to establish breach of contract. The establishment of reserves is, however, relevant to the bad faith claim,[32] as USAA acknowledges.[33]

Thus, USAA has shown that the existence of prejudice weighs in favor of bifurcation.

### Convenience

The next factor in the analysis is convenience. McKeen argues that bifurcation would be inconvenient and would "leave all parties tripping over themselves throughout the trial process as they continuously try to filter what they say and don't say in witness examinations, objections, and other courtroom presentation."[34] USAA argues there is no such concern "because the nature of the witness testimony and exhibits naturally separate themselves into two trials."[35]

Rule 42(b) states that bifurcation may be allowed "[f]or convenience . . . ." It does not state *for whom* bifurcation must be convenient. While bifurcation may be convenient for one party, it may be inconvenient for the other party. Bifurcation is almost always *inconvenient* for the court and for the jury because it has the potential to confuse jurors about the trial process and require the court to rule on additional objections from opposing counsel that certain evidence is being introduced prematurely. This adds complexity to a trial. These factors weigh against bifurcation because of inconvenience.

However, USAA proposes a convenient way to split the trial into two phases. "Phase One" would be limited to the valuation of McKeen's injury and the breach of contract claim, and "Phase Two" would address USAA's handling of McKeen's insurance claim and her argument

---

[32] *First Nat'l Bank of Louisville v. Lustig*, Civ. A. Nos. 87-5488, 88-1682, 1993 WL 411377 (E.D.La. Oct. 5, 1993) (unpublished) ("Reserve information is relevant to show the insurer's state of mind in relation to its claims settlement practices") (citing cases); *see also* Timothy M. Sukel, Mike F. Pipkin, Discovery and Admissibility of Reserves, 34 Torts & Ins. L.J. 191 (1998).

[33] USAA Supplemental Reply at 2 ("The only relevancy reserves possibly have is the bad faith in Phase II.").

[34] McKeen Supplement at 3.

[35] USAA Supplemental Reply at 3.

that USAA engaged in bad faith. USAA notes that witnesses may be easily split between the two phases, as well as exhibits and jury instructions.[36] After examining USAA's proposal, it appears USAA is correct, especially in light of the prejudice concerns that are addressed above. Thus, USAA has shown that this factor is neutral.

### Expedition/Economization

The final factor to consider in the bifurcation analysis is whether bifurcation would "expedite and economize" the trial. This factor weighs against bifurcation because, as McKeen describes, bifurcation would require "the jury to have to go through the trial process twice—two openings, two evidence presentations, two closing arguments, two rounds of jury instruction, and two deliberations."[37] This would not expedite or economize the trial, but would be an added burden and expense on the parties, the court, and the jurors.

In *Trujillo*, the court acknowledged that even when a court decides to bifurcate a trial into separate phases, the same jury should ordinarily hear both phases.[38] By having the same jury hear both phases of the case, the court can avoid duplication of issues and re-explanation of facts and parties to a new jury.[39] "By separating the claims while still allowing the same jury to hear both phases, the Court strikes a position that equally addresses each parties' [sic] concerns."[40] The same reasoning is applicable here. By ordering bifurcation, "[USAA] will be saved from the jury hearing evidence on settlement negotiations and the claims handling process until after the determination of the express breach of contract. [McKeen] will be saved from providing

---

[36] USAA Supplement at 2-8.

[37] Opposition at 4.

[38] *Trujillo*, at *5.

[39] *Id.* ("Using the same jury will eliminate the necessity for repetitive testimony . . . .").

[40] *Id.*

9

evidence of damages in two entirely separate trials."[41] Therefore, a bifurcated trial can be expedited and economized by having the same jury hear both phases of the case.[42]

Further, the opening statements, closing arguments, instructions and deliberations are not *multiplied* by bifurcation as much as *divided*. This is demonstrated by USAA's suggested division of instructions. Splitting events does not cumulate time. This factor is neutral.

## CONCLUSION

USAA's arguments regarding bifurcation are correct. To provide USAA with a fair trial, and to avoid prejudice that would result if both claims were heard together, the jury should not hear evidence about bad faith before deciding whether USAA breached its contract with McKeen. If evidence were to be presented to the jury regarding settlement negotiations or reserves—evidence that is admissible to establish bad faith—before the jury decided whether USAA breached its contract, the jury might wrongly use that evidence to conclude that USAA was liable and offered to settle with McKeen or created reserves in recognition of that liability. Such an assumption would be very prejudicial to USAA. An insurer cannot be forced to

> choose between 1) insisting on its right to exclude evidence of settlement negotiations and coverage determinations (thereby losing the advantage of showing that it was attempting to be reasonable in defense of the bad faith claims) and 2) putting on such evidence and risking a prejudicial inference that it has admitted liability on the contract action.[43]

Further, McKeen's argument that a single trial would be less complicated does not outweigh the potentially significant prejudice USAA faces if both claims were heard at once. Jury instructions telling the jury to separate the evidence would not "unring the bell" that they

---

[41] *Id.*

[42] Importantly, "[u]nder Utah law, a bad faith claim is not necessarily predicated on liability for a breach of contract." *Id.* at *4 (citing *Christiansen v. Farmers Ins. Exch.*, 116 P.3d 259, 262 (Utah 2005)). Therefore, even if USAA prevails on the breach of contract claim, a trial on the bad faith claim may still be necessary.

[43] *Shrader*, 882 P.2d at 830 (internal citations and quotation marks omitted).

10

had heard regarding settlement, reserves, or other evidence that would be presented to establish bad faith. Further, McKeen's argument that a jury may be motivated to rule against McKeen during Phase One if they realize it will shorten their jury service[44] is not grounded in any law, jury instruction, or common notion of fairness. Our society places trust in the jury system to render impartial verdicts based on facts and law. McKeen's argument suggests a profound distrust in that system, which is unsupported.

## ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that the Motion[45] is GRANTED. Trial in this case will be bifurcated into two phases. Phase One of the trial will be limited to evidence regarding the value of McKeen's injuries as a result of the November 27, 2007 auto-pedestrian accident and McKeen's claim against USAA that it expressly breached their contract. Phase Two of the trial will be limited to evidence regarding USAA's claims handling process and McKeen's claim that USAA engaged in bad faith. The same jury will serve during both phases of the case to expedite and economize resolution of the issues.

Dated August 11, 2016.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[44] McKeen Supplement at 2.

[45] USAA-CIC's Motion and Memorandum in Support of Motion to Bifurcate ("Motion"), docket no. 71, filed July 18, 2016.